[Cite as *State v. Baker*, 2015-Ohio-4709.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26547 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 14-CR-1682 |
| v. | : | |
| | : | (Criminal Appeal from |
| PAUL D. BAKER | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of November, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CHRISTINA E. MAHY, Atty. Reg. No. 0092671, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088791, Arnold & Arnold, Ltd., 120 West Second Street, Suite 1502, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Paul Baker appeals from a judgment of the Montgomery County Court of Common Pleas finding him guilty, pursuant to a plea of no contest, of Aggravated

Possession of Drugs.   Baker contends that the conviction must be reversed because the trial court erred by failing to suppress evidence.   For the reasons set forth below, we Affirm.

## I. Baker Is Approached, and then Frisked

{¶ 2} In May 2014, shortly after midnight, Dayton Police Department Dispatch received a call from an individual who identified herself, and reported a suspicious person in the area of East Fifth Street and Ringgold Street.   Dayton Police Officers, Anthony Sawmiller and Debra Fraley, responded to the scene, arriving a few minutes after the dispatch.   They were in a marked cruiser, and they were both wearing uniforms.

{¶ 3} The officers observed one individual in the area.   That person, later identified as Baker, matched the description given by the caller.   The officers stopped the cruiser and began to walk up behind Baker.   Baker was looking back at them.   Sawmiller yelled at Baker, stating that he needed to speak to Baker, and to "come here a second."   Baker looked over his left shoulder toward the officers, asking, "Why? What did I do?"   Baker also responded that he had not done anything wrong.

{¶ 4} Baker continued to walk away from the officers.   As he did so, he moved his body in a manner that prevented the officers from seeing his right hand.   He then moved his right hand toward the front pocket of his pants.   At that point, the officers physically restrained Baker so that he was unable to continue to reach into his pocket.   Baker continued to tense up his right arm, and the officers used two "pressure point" maneuvers to force compliance.   The officers conducted a patdown and felt what they believed to be hypodermic needles.   Two needles and a metal crack pipe were removed from Baker's pocket, and he was placed under arrest.

## II. Course of The Proceedings

{¶ 5} Baker was indicted on one count of Aggravated Possession of Drugs, in violation of R.C. 2925.11(A). He moved to suppress evidence. Following a hearing, the motion to suppress was overruled. Thereafter, Baker entered a plea of no contest. He was sentenced to community control sanctions for a period not to exceed five years, along with a six-month suspension of his driver's license. Baker appeals.

I. **The Trial Court Could Find, on the Evidence Presented, that Baker's Encounter with the Police Was Consensual Until his Actions Gave the Police Reason to Believe Baker Was Armed, which Permitted the Police to Pat him Down for Weapons**

{¶ 6} Baker's sole assignment of error states as follows:

> THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE AND SUBSEQUENT STATEMENTS OBTAINED BY THE STATE AS A RESULT OF LAW ENFORCEMENT'S IMPROPER SEARCH OF APPELLANT'S PERSON, IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I SECTION FOURTEEN OF THE OHIO CONSTITUTION.

{¶ 7} Baker contends that the trial court erred in overruling his motion to suppress evidence. He claims that the trial court erred in finding that the initial contact between himself and the officers was consensual, and in finding that the officers had a reasonable, articulable suspicion that he was armed thereby justifying a pat-down of his person. In support, he contends

that the encounter was not consensual, because the police physically restrained him when he did not acquiesce to the request to talk.

{¶ 8} This argument presents two issues for review. First, we must determine whether Baker was seized within the context of the Fourth Amendment to the United States Constitution. Second, if he was seized, was it justified by a reasonable articulable suspicion that he was engaged in criminal activity?

{¶ 9} The Fourth Amendment, as well as the Ohio Constitution, Article I, Section 14, guarantees the right to be free from unreasonable searches and seizures. Generally, a warrantless search and seizure is unreasonable unless an exception applies. *State v. Westover*, 2014-Ohio-1959, 10 N.E.3d 211, ¶ 12 (10th Dist.). However, not every encounter with the police constitutes a seizure. *Id.* The United States Supreme Court has delineated three types of contact to be utilized in determining whether an individual's Fourth Amendment rights are implicated. These include consensual encounters, investigatory detentions known as *Terry* stops, and seizures equivalent to arrest. *Id.*, at ¶ 14.

{¶ 10} Encounters are consensual when the police merely approach a person in a public place, engage the person in conversation, request information, and the person remains free not to answer and to walk away. *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). This type of encounter does not implicate the Fourth Amendment.

{¶ 11} The investigatory detention, known as a *Terry* stop, is more intrusive than a consensual encounter, but less so than an arrest. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This type of encounter occurs when the officer has by either physical force or a show of authority restrained the person in such a way that a reasonable person would not feel free to terminate the contact. *Id.* The police may detain an individual when the officer has a

reasonable suspicion, based upon specific, articulable facts that criminal activity is occurring. *Id.* at 21-22. This detention must be limited in duration and purpose, and can only take as long as necessary for the officer to confirm or dispel his suspicions. *Id.* Thus, if there is a reasonable, articulable suspicion of criminal activity, and the stop lasts no longer than necessary to effectuate its purpose, the Fourth Amendment is not violated.

{¶ 12} The final encounter, a seizure that is the equivalent of a formal arrest, can only occur when the police have probable cause. *State v. Barker*, 53 Ohio St.2d 135, 372 N.E.2d 1324 (1978). A seizure is equivalent to an arrest when there is an intent to arrest, the seizure is made under real or pretended authority, it is accompanied by actual or construction detention, and it is understood by the person arrested. *Id.* at syllabus.

{¶ 13} We agree with the trial court that this incident began as a consensual encounter when the police merely asked to speak to Baker. At that point he was free to walk away, which he did. However, the officers continued to follow, and then physically restrained him. It was at that point that the encounter lost its consensual nature, and became an investigatory detention followed by an arrest.

{¶ 14} Sawmiller testified that the area where Baker was stopped was a high-crime area known for drug activity and weapons. Baker was the only person in the area. When the police approached Baker, they stated that they needed to speak to him. Baker asked them why they needed to talk to him, and continued to walk away. He angled the right side of his body away from the officers, and began to reach toward his right pocket. The officers again asked to speak to him, but he just kept walking and asking them, "why," and "what did I do?" He continued to walk away, and to angle the right side of his body out of the officers' sight line.

{¶ 15} Sawmiller, who had twenty years of law enforcement experience, with nine of those

years assigned to the district where this incident occurred, testified that the movement made by Baker made him concerned that Baker was attempting to destroy evidence or to grab a weapon. Sawmiller testified that he and his partner continued to attempt to tell Baker why they wanted to stop him, but he kept trying to move his right side out of their sight. Sawmiller testified that his main concern at that point was for officer safety because the moves were not consistent with reaching for one's wallet or identification, but rather were consistent with trying to hide drugs or weapons. Sawmiller testified that they ran up to him to make sure he had no weapon, and that at that point he was not free to leave.

{¶ 16} When reviewing a determination on a motion to suppress, we must be mindful that the trial court assumes the role of trier of fact, and is in the best position to resolve questions of fact and to determine the credibility of witnesses. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Then we must independently determine whether the facts satisfy the applicable legal standard. *Id.*

{¶ 17} Although this case presents a close call, given the totality of the circumstances, we conclude that the trial court did not err in overruling the motion to suppress, based upon a finding that Baker's furtive movements and behavior provided the officers with a reasonable and articulable suspicion that he might have possessed a weapon, thereby justifying the *Terry* stop and the limited pat-down of his person.

{¶ 18} Accordingly, the sole assignment of error is overruled.


**Conclusion**

{¶ 19} Baker's sole assignment of error having been overruled, the judgment of the trial

court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J., concur.

Copies mailed to:

Mathias H. Heck
Christina E. Mahy
Adam J. Arnold
Hon. Dennis J. Langer